# EXHIBIT A

RECEIVED AND FILED
BRIDGET HANNA
CLERK OF COURT
2022 JUN 20 A 11: 15
Original signed by
Jill Lambert
DY. CLERK & RECORDER
ASCENSION PARISH, LA.

| | |
|---|---|
| **DEREK MUSSO** | **NO. 134250 DIVISION** |
| **VERSUS** | **23RD JUDICIAL DISTRICT COURT** |
| | **PARISH OF ASCENSION** |
| **WHOLESALE ELECTRIC SUPPLY COMPANY OF HOUSTON, INC.** | **STATE OF LOUISIANA** |

DIVISION B

**PETITION FOR RULE TO SHOW CAUSE FOR UNPAID WAGES**

NOW BEFORE THE COURT comes Plaintiff, Derek Musso, by and through undersigned counsel, and requests relief as follows:

1.

Made Plaintiff herein is Derek Musso, a resident of lawful age of Ascension Parish in the State of Louisiana.

2.

Made Defendant herein is Wholesale Electric Supply Company of Houston, Inc., a Texas corporation authorized to do and doing business in the State of Louisiana, who has designated its principal business establishment in Louisiana within Ascension Parish.

3.

Plaintiff brings this action to recover the full amount of his final pay from Defendant, his former employer, who has failed and refused to comply with the provisions of La. R.S. 23:631 et seq. thus entitling Plaintiff to judgment against Defendant for his unpaid wages, penalties, and attorney fees.

4.

Plaintiff Derek Musso was employed by Defendant Wholesale Electric in March of 2002, and worked as an Outside Salesman from 2010 until April 19, 2022

5.

During his employment Plaintiff was paid exclusively by commissions on the sales that he made for Wholesale Electric, receiving 17 percent of Wholesale Electric's profit on every sale that Plaintiff made.

6.

On April 12, 2022 Plaintiff notified Defendant that he would be resigning from his employment effective June 6, 2022.

7.

On April 19, 2022, Defendant's manager notified Plaintiff that despite his providing advance notice that his resignation would be effective on June 6, 2022, the Plaintiff's employment would end on that same day, April 19, 2022.

8.

Plaintiff's manager initially assured Plaintiff that he would be paid the full amount of his commissions for all of the sales that he made through his last day of employment. However, Plaintiff's manager subsequently informed Plaintiff that he would only receive his commissions with respect to sales that he had made for which Defendant had already received payment from the customer.

9.

La. R.S. 23:631(A)(1)(b) provides that an employer must provide the final paycheck to an employee who resigns from his position on or before the next regularly scheduled payday, or not later than 15 days following the date of resignation, whichever occurs first. Therefore, because Plaintiff's last day of employment was April 19, 2022, Defendant was required to provide Plaintiff's final paycheck not later than May 4, 2022, which is 15 days from the Plaintiff's last day of employment.

10.

As of Plaintiff's last day of employment, he had made sales which would produce a profit for Defendant but for which he had not yet been paid his commission of 17% of that profit. Plaintiff's commissions were typically adjusted downward to reflect small reductions in Defendant's profit, most often due to shipping charges. Plaintiff's commission of 17% of this profit, minus a reduction to reflect the average adjustment over the past 12 months of 5.32%, entitled Plaintiff to a final paycheck in the gross amount of $112,059.12.

11.

On May 5, 2022 Defendant paid Plaintiff by direct deposit the amount of $28,303.47. This payment was made one day later than the statutory deadline, and the payment was $83,755.65 less than the amount that Defendant owed to Plaintiff.

12.

As an outside salesman, Plaintiff's job was to sell products for Defendant

Wholesale Electric to customers such as electrical contractors, industrial plants, and construction companies. After Plaintiff negotiated the terms of a sale with the customer such that the parties agreed on the items to be purchased and the price for those items, the Plaintiff's work associated with the sale was complete – there was no more significant work to be done by the Plaintiff, and the only tasks that remained in connection with the sale were beyond the Plaintiff's control such as preparing and sending the invoice to the customer, shipping and delivery of the items sold, and the receipt of the customer's payment.

13.

Plaintiff's commission on the sale was earned when the sale occurred. Under Louisiana law, the sale occurred when there was an agreement as to the thing and the price pursuant to Louisiana Civil Code article 2456 which provides: "Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." Plaintiff shows that the sales that he booked prior to his termination were completed as a matter of law, and that he earned his commission on all of these sales.

14.

Furthermore, Louisiana's courts have held that a salesman paid solely by commission is deemed to have earned the commission when he has completed his work associated with the sale, and the remaining tasks for completion of the sale are beyond his control. Plaintiff shows by the application of this rule he earned his commissions on each sale that he booked prior to his termination.

15.

After Plaintiff completed these sales there was no more work for a salesman to do regarding these sales. All that remained were the routine steps of printing the invoice and sending it to the customer, arranging for shipment or delivery of the items purchased, and receiving the payment from the customer – all things which were beyond the control of the salesman who made the sale.

16.

Although Defendant has not provided any explanation for its failure to pay the Plaintiff all of the commissions for the sales that he made prior to his departure, based

upon the statements by Plaintiff's manager and other information Plaintiff believes that Defendant may be relying upon this language in Defendant's "Employee Handbook" in refusing to pay Plaintiff the full amount of the commissions that he earned:

> FINAL PAY
> At the end of employment, an employee will be compensated for actual days and hours worked from the last pay period. Final checks for employees who voluntarily terminate their employment will be issued no later than the next regularly scheduled pay date. Final checks for employees who are involuntarily terminated will be issued no later than the sixth day after the date of termination. However, the following exceptions will apply regarding final checks for those employees who receive commissions:
>
> - Inside Sales commissioned employees will receive any outstanding commissions the month following date of termination on or about the twentieth (20th).
> - Outside Sales commissioned employees will be paid based on completed transactions. A transaction is considered complete after it has been sold, shipped, invoiced and collected.

17.

Apparently relying upon this provision of its Employee Handbook Defendant Wholesale Electric has refused to pay the Plaintiff his commission for all sales which the Plaintiff made but for which Wholesale Electric claims that it had not yet received payment, or delivered the items purchased, or invoiced the customer. Wholesale Electric is still receiving the profit from all of these sales derived from the Plaintiff's work, and Wholesale Electric is also pocketing the 17% of its profit that it owed to the Plaintiff as his commission but refused to pay.

18.

Plaintiff shows that the "Employee Handbook" apparently relied upon by Defendant cannot excuse Defendant's failure to pay the Plaintiff the full amount of the commissions that he earned during his employment, because (a) the language in the handbook providing that outside salesmen would only be paid on what Defendant defined as "completed sales" only applies to outside salesmen who are involuntarily terminated and not to outside salesmen who resign their position, such as the Plaintiff; (b) the handbook is not a contract, but rather a collection of statements which the Defendant has made solely for its own benefit which even the Defendant has characterized as being not a "legal document"; (c) the law prohibits an employer from forfeiting or refusing to pay an employee the full amount he has earned as a consequence of the resignation or termination of the employee; and (d) in any event, Plaintiff resigned from his position effective on June 6, 2022, and Plaintiff shows that by

this date all of the sales that he made prior to his departure would have been "completed" -- by refusing to accept Plaintiff's resignation date, Defendant prevented the condition it imposed from being fulfilled.

19.

The provision in Defendant's "Employee Handbook" that states that outside salesmen paid by commission will only be paid on "completed sales" by its terms only applies to those outside salesmen who are involuntarily terminated. This has no application to the Plaintiff, who resigned from his position and was not fired.

20.

Plaintiff shows that the "Employee Handbook" relied upon by Defendant is nothing more than a collection of self-serving edicts written and compiled by the Defendant for its own benefit. Defendant's "Employee Handbook" declares that its contents are under the exclusive control of the Defendant, and that the Defendant can change anything in the "Employee Handbook" at any time with or without notice to the company's employees: "the policies, rules and benefits described in it are subject to change at the sole discretion of the Company at any time."

21.

Defendant also specifically declares that the "Employee Handbook" is <u>not a legal document</u>: "this Handbook is neither a contract of employment nor a legal document."

22.

As the "Employee Handbook" is not a contract, is subject to change at the whim of the Defendant at any time, and is not a legal document, Plaintiff shows that it has no legal significance and cannot provide a lawful basis for the Defendant's refusal to pay the Plaintiff his earned wages.

23.

In addition, nothing contained in the "Employee Handbook" can modify the protections contained in the law for employees whose employment has ended. The provision relied upon by Defendant would result in the forfeiture of sales commissions which the Plaintiff had already earned at the time of his termination, which is prohibited by Louisiana law including La. R.S. 23:634.

24.

Plaintiff shows that there is no legal basis for Defendant's refusal to pay him the full amount of the sales commissions that he earned during his employment. Having completed these sales and finished all of the work required of him in connection with these sales, Plaintiff Derek Musso had earned his commissions on these sales. It is unlawful and a violation of La. R.S. 23:634 for Wholesale Electric to in effect impose the forfeiture of the commissions that the Plaintiff had earned as a consequence of his leaving his employment.

25.

Plaintiff gave advance notice of his resignation from his employment to Defendant, advising Defendant on April 12, 2022 that his last day of employment would be June 6, 2022. Plaintiff shows that by June 6, 2022 all of the sales that he made by the date that he notified Defendant of his intent to resign his position would be "completed" as that term is defined by Defendant's handbook.

26.

Defendant is attempting to avoid paying Plaintiff his sales commissions, and instead keeping that money for itself, by actively preventing the Plaintiff from completing the conditions that Defendant's handbook imposes. Defendant claims that it will only pay final sales commissions on sales that it defines as "completed" meaning that the item has been delivered and the customer's payment has been received, but Defendant will not allow Plaintiff to remain as an employee through the effective date of his resignation, thus making it impossible for the sales to be "completed" during the Plaintiff's employment.

27.

Louisiana Civil Code article 1772 provides: "A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." Defendant cannot take action to prevent the Plaintiff from completing sales and then refuse to pay Plaintiff's commissions because Plaintiff's sales were not completed.

28.

Defendant cannot lawfully engineer a situation in which it keeps for itself the

commissions due to the Plaintiff by manipulating the effective date of the Plaintiff's resignation. Plaintiff shows that even if the provision in Defendant's handbook could lawfully apply, which Plaintiff denies, that provision cannot be used here to deprive Plaintiff of his commissions because it is only due to the Defendant's actions that Plaintiff did not remain employed until all of the sales were "completed" as Defendant has defined that term.

29.

On May 18, 2022 Plaintiff, through counsel, sent the letter attached as Exhibit A to Defendant through Plaintiff's manager demanding payment of the full amount due to Plaintiff as his final wages. To date, Defendant has neither responded nor paid the amount due to Plaintiff.

30.

Plaintiff seeks and is entitled to judgment against Defendant for the full amount due as Plaintiff's final wages, which is $83,755.65.

31.

In addition, because Defendant has failed to pay the amount due within the time allowed by law, Plaintiff seeks and is entitled to judgment against Defendant for the penalty wages provided for by La. R.S. 23:632(A).

32.

With regard to its failure to pay the Plaintiff for his commissions on the sales he made near the end of his employment, if Defendant is relying upon the "Employee Handbook" provision cited above then because this provision violates the law forbidding the forfeiture of earned pay, Defendant is not in good faith as a matter of law: "Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." *Beard v. Summit Institute of Pulmonary Medicine*, 707 So.2d 1233, 1237 (La. 1998). Therefore, Defendant is liable to the Plaintiff for the penalty provided by La. R.S. 23:632(A) which is 90 days' wages.

33.

Because Plaintiff was paid by commission rather than by a periodic salary or hourly wage it is necessary to determine what the Plaintiff's daily wage is for purposes of the statutory penalty provided by La. R.S. 23:632(A). The method for calculating the

daily wages for an employee paid by commission that has been established by prior reported Louisiana cases is to divide the employee's total commissions for the past year by 250 "to represent the normal number of working days in a calendar year". *Jeansonne v. Schmolke*, 40 So.3d 347, 360 (La. App. 3d Cir. 2010). Plaintiff shows that he earned a total of $412,950.74 in commissions during the last twelve months of his employment; dividing this figure by 250 results in a daily wage of $1,651.80.

34.

For the foregoing reasons, Plaintiff seeks and is entitled to judgment against Defendant for 90 days' penalty wages as provided by law, or $148,662.

35.

Plaintiff presented Defendant through Plaintiff's manager with a written demand for the full amount of Plaintiff's final pay more than three days prior to the filing of this action, and therefore the law provides that Plaintiff is entitled to an award of his attorney fees if he is successful in any part of this action. La. R.S. 23:632(C). Plaintiff seeks and is entitled to judgment against the Defendant for his attorney fees in an amount to be established at trial.

36.

Pursuant to La. R.S. 23:631 et seq. and Louisiana Code of Civil Procedure article 2592, Plaintiff Derek Musso is entitled to have his claims against the Defendant heard by summary proceeding, and to have Defendant ordered to appear and show cause why a judgment should not issue in favor of Plaintiff and against Defendant for payment of the full amount of commissions due at the end of Plaintiff's employment, plus penalty wages, attorney fees, and all costs of this proceeding.

WHEREFORE, PLAINTIFF DEREK MUSSO prays that a Rule to Show Cause be issued and served upon Defendant Wholesale Electric, ordering Defendant to appear and show cause at a date and time to be set by this Honorable Court, if any it can, why a judgment should not be granted in favor of Plaintiff and against Defendant for unpaid final wages in the amount of $83,755.65, penalty wages in the amount of $148,662, attorney fees, interest from the date of judicial demand, and all costs of this proceeding.

BY ATTORNEY:

KARL J. KOCH, #17010
8702 Jefferson Hwy, Suite B
Baton Rouge, LA 70809
Telephone: (225) 223-6215
Fax: (225) 612-6412
Email: karl@kochlawyer.com

**Please Serve Defendant:**
Wholesale Electric Supply Company of Houston, Inc.
Through its agent for service:
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

A TRUE COPY
Deputy Clerk & Recorder
ASCENSION PARISH 7/1/2022

DEREK MUSSO | NO. | DIVISION
--- | --- | ---

VERSUS 134256 | 23RD JUDICIAL DISTRICT COURT

RECEIVED AND FILED BRIDGET HANNA CLERK OF COURT 2022 JUN 20 A 11: 14 DEPUTY CLERK & RECORDER ASCENSION PARISH, LA.

WHOLESALE ELECTRIC SUPPLY COMPANY OF HOUSTON, INC. | PARISH OF ASCENSION | STATE OF LOUISIANA

**RULE TO SHOW CAUSE**

CONSIDERING THE ABOVE AND FOREGOING, it is ORDERED that Defendant Wholesale Electric Supply Company of Houston, Inc. appear at 9 o'clock a.m. on the 13th day of September, 2022 and show cause, if any it can, why judgment should not issue against it and in favor of Plaintiff Derek Musso pursuant to La. R.S. 23:631 *et seq*. for unpaid final wages in the amount of $83,755.65, for penalty wages in the amount of $148,662, for Plaintiff's attorney fees, for interest from the date of judicial demand, and for all costs of this proceeding.

~~Gonzales,~~ Convent, Louisiana this 24th day of June, 2022.

JUDGE
23RD JUDICIAL DISTRICT COURT
Cody M. Martin
Judge - Division B
23rd Judicial District Court

**Please Serve Defendant With Signed Rule to Show Cause:**

Wholesale Electric Supply Company of Houston, Inc.
Through its agent for service:
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

A TRUE COPY
Deputy Clerk & Recorder
ASCENSION PARISH 7/1/2022